USAO # 2010R00923

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 NOV 18  AM 10: 00

CLERK'S OFFICE
AT BALTIMORE

BY_____DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### ((Northern Division)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. *CCB-14-0538* |
| | * | |
| CURLEE SMITTIE, | * | **(Wire Fraud Affecting a** |
| | * | **Financial Institution, 18 U.S.C. §** |
| | * | **1343)** |
| Defendant. | * | |

*******

## INFORMATION

### COUNT ONE
### (Wire Fraud Affecting a Financial Institution)

The United States Attorney for the District of Maryland charges that:

At all times relevant to this Information:

1.      Defendant **CURLEE SMITTIE (SMITTIE)** was a resident of Baltimore, Maryland and the owner and operator of Smittie Enterprises, Inc. **SMITTIE** maintained a bank account (account # *********5779) in the name of Smittie Enterprises at a branch of Bank of America located in Baltimore, Maryland.

2.      Smittie Enterprises, Inc. was a Maryland corporation that conducted business as an automobile wholesale dealer in the Baltimore, Maryland area. Smittie Enterprises, Inc. used the registered trade name "Smittie Auto Brokers."

3.      Manheim Auto Auction ("Manheim") was a Pennsylvania-based company which operated auction houses for automobile dealers at several locations throughout the United States and in several other countries. Manheim had over 75 locations, with

1

its flagship location in Manheim, Pennsylvania, and another location in Jessup, Maryland.

4.     Manheim allowed frequent buyers of automobiles at its locations to purchase automobiles on short-term credit extended by Manheim. Under this program, Manheim paid the seller of the automobile on the day of sale. The buyer then had a short period of time, approximately two weeks, to pay Manheim the purchase price, plus any applicable fees.

5.     Manheim maintained a bank account at PNC Bank, located in Pennsylvania, for the purpose of issuing checks to sellers of automobiles under the short-term credit program.

6.     Bank of America was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation and was a member bank of the Federal Reserve System, and therefore constituted a "financial institution" within the meaning of 18 U.S.C. § 20. Financial transactions that created a risk of loss, or that caused an actual loss, to Bank of America therefore "affected a financial institution" for purposes of 18 U.S.C. § 3293(2).

## The Scheme and Artifice to Defraud

7.     Beginning in February 2008 and continuing through at least January 2009, in the District of Maryland and elsewhere, the defendant,

### CURLEE SMITTIE,

and others known and unknown to the Grand Jury, did knowingly and willfully devise and intend to devise a scheme and artifice to defraud Bank of America, and to obtain money and property from Bank of America, a financial institution, by means of

2

materially false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice to defraud and attempting to do so, did cause to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals.

### Object of the Scheme

8.    The object of the scheme was for defendant **SMITTIE**, using the short-term credit offered by Manheim, to obtain funds from Manheim in Pennsylvania and to divert those funds to the Smittie Enterprises account at Bank of America in Maryland, from which Smittie would be able to draw upon those funds and to convert them to his own use.

### Manner and Means of the Scheme and Artifice to Defraud

9.    As part of the scheme and artifice to defraud, **SMITTIE** listed automobiles for sale under the names of other car dealers at Manheim locations. **SMITTIE**, conducting business under the name of Smittie Auto Brokers, then purchased the automobiles, in a self-dealing transaction, using Manheim's short-term credit.

10.   It was further part of the scheme and artifice to defraud that **SMITTIE** would take the check issued by Manheim under the short-term credit program and made out in the name of the selling auto dealer, and deposit it into the Smittie Enterprises account ( # 5779) at Bank of America.  Each deposit by **SMITTIE** caused Bank of America in Maryland to initiate a wire communication to Manheim's bank, PNC Bank, in Pennsylvania, to complete the transfer of funds from Manheim's account to **SMITTIE's** account.  **SMITTIE** made these deposits into the account # 5779 in the

3

expectation that, based upon the new balance in the Smittie Enterprises account, Bank of America would honor checks subsequently written by him upon that account, and **SMITTIE** did in fact write such checks. It was reasonably foreseeable to **SMITTIE** that if Manheim discovered his scheme and refused to honor the checks it had previously written to various auto dealers to pay for his "purchase" of various automobiles, Bank of America would be placed at risk of suffering a loss. Bank of America did in fact suffer a loss of $166,500.16 when the scheme was discovered, because the balance in the Smittie Enterprises account was not sufficient to cover the reversed checks.

11.     It was further part of the scheme and artifice to defraud that when the purchase price that had been loaned to **SMITTIE** under Manheim's short-term credit program was due to be paid, **SMITTIE** would then again list the automobile for sale under the name of another auto dealer, and sell it to himself again, as described in ¶¶ 9-10.

12.     It was further part of the scheme and artifice to defraud that **SMITTIE** paid Manheim for amounts of money previously owed under the short-term credit program with money he received from Manheim by subsequent self-dealing sales to himself, financed by the short-term credit plan.

13.     It was further part of the scheme to defraud that **SMITTIE** used at least twenty different automobiles to execute the scheme to defraud.

14.     It was further part of the scheme to defraud that **SMITTIE,** in executing the scheme to defraud, caused Manheim to issue over $2,200,000 in checks through its short-term credit program, which were then deposited by **SMITTIE** into the Smittie

4

Enterprises account # 5779 at Bank of America.  Based upon the resulting balances, Bank of America then honored checks that **SMITTIE** wrote upon the # 5779 account.

### THE CHARGE

15.    On or about January 13, 2009, in the District of Maryland and elsewhere, the defendant,

### CURLEE SMITTIE,

for the purpose of executing the scheme and artifice to defraud Bank of America, and to obtain money and property from Bank of America, a financial institution, did knowingly transmit and cause to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals and sounds, to wit:  an electronic funds transfer from Manheim's account at PNC in Pennsylvania in the amount of $32,650.00 to the Smittie Enterprises account (# 5779) at Bank of America in Baltimore, Maryland.

18 U.S.C. § 1343
18 U.S.C. § 2

ROD J. ROSENSTEIN
UNITED STATES ATTORNEY
FOR THE DISTRICT OF MARYLAND

Date:   November ____18th____, 2014

5